**REVISED AFFIDAVIT OF JOSHUA J. AKRONOWITZ**

I, Joshua J. Akronowitz, being first duly sworn, depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been so employed since 2007. I have received formal training in the laws and regulations relating to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1706, and the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, and have conducted and participated in investigations of the above listed laws and regulations.

2. On August 16, 2011, HSI received an unsolicited email from a voluntary source saying he had been contacted by an Iranian known as "M. Sheikhi, on behalf of Radyab Bartar Company." In his email to the source, Sheikhi asked for assistance in procuring "protection relays" from a company he identified as Areva. The email contained a list of parts he was interested in purchasing. Sheikhi's email also contained his signature block, which included his email address, radyab.bartar@gmail.com, and Iranian phone number, 982144406457, and the address of the company in Tehran, Iran.

3. On August 24, 2011, I sent a research request for information on phone number 982144406457, which is an Iranian phone number that was included in Sheikhi's signature block in the email he sent to the source. The research request was sent to an HSI-accessible law enforcement database.

4. On August 24, 2011, I reviewed the research provided in response to my request, which revealed that the Iranian phone number had been in contact with a domestic phone number, 818-971-9512, on one occasion, that is, on July 4, 2011. At the time I reviewed the response, the "818" number was the only U.S. phone number that had been in contact with the Iranian phone number. Based on my professional experience, because I once worked in Los Angeles, California, I recognized that the "818" area code was assigned to the Los Angeles County area. My request did not yield any other information that was useful to my investigation.

5. On August 16, 2011, I contacted an employee, who worked for Areva's Nuclear Parts Center, which is located in Lynchburg, Virginia. He agreed to examine the parts list provided in Sheikhi's email. I sent the list of parts to him on August 31, 2011, so that he could explain to me what the protection relays were, and whether they are export controlled.

6. On August 31, 2011, the Nuclear Parts Center employee explained that the parts are affiliated with a portion of Areva then known as Areva Transmission and Distribution, which had been sold to another company then known as Alstom Schneider Electric. He explained that protection relays are complex electromechanical devices that are

incorporated into and designed to calculate operating conditions on electrical circuits. They are generally intended to trip circuit breakers when a problem is detected in the circuit, in order to prevent damage to, or malfunctioning of, an electrical circuit or power grid. He said that he did not know whether all protection relays can be exported from the U.S. without a license, but some do require an export license from the U.S. Department of Commerce.

7. Even if a license was not required to export the protection relays, it would have been a violation of IEEPA and ITSR for a citizen or lawful permanent resident of the United States to export protection relays to Iran without permission from the U.S. Department of Treasury, Office of Foreign Assets and Control.

8. On September 9, 2011, I submitted an Administrative Export Enforcement Control Subpoena to Google for subscriber information and a list of IP addresses used for email account radyab.bartar@gmail.com.

9. On September 9, 2011, I entered Sheikhi's information in a law enforcement database known as TECS, so that I would be notified whenever Sheikhi traveled to the United States.

10. On September 20, 2011, another HSI special agent and I travelled to Vienna, Austria, where we conducted an interview with the source who submitted Sheikhi's email to HSI.

11. On September 27, 2011, I re-faxed the September 9th administrative subpoena to Google per their request. On September 29, 2011, Google sent me the information requested in the subpoena, that is, the subscriber information for email account radyab.bartar@gmail.com, and a log of the IP addresses where that email account was logged in and used.

12. On September 27, 2011, I performed a Google internet search on the "818" phone number to find out which phone company was assigned to that phone number. That open source internet search showed that the phone number was assigned to Bandwidth.com Inc. I then prepared and served an Administrative Export Enforcement Control Subpoena on Bandwidth.com Inc. to obtain subscriber and toll information for that phone number.

13. On October 4, 2011, I received a response from Bandwidth.com Inc., which stated that Bandwidth was not the service provider for the "818" number. Bandwidth's response indicated that Google/Google Voice was the current provider.

14. On October 6, 2011, I prepared and served an Administrative Export Enforcement Subpoena on Google/Google Voice for subscriber and toll information for phone number 818-971-9512.

15. On October 18, 2011, Google responded to my subpoena request with subscriber information showing that the "818" number was registered to Shantia Hassanshahi, with a particular home address in Westlake Village, California. Google also provided call log information for the period of September 6, 2011 to October 6, 2011, which showed that Hassanshahi's "818" number made contact with an Iranian phone number (989381911602) only once, on October 5, 2011. In addition, there is a missed call between Hassanshahi's "818" number and an Iranian cell phone number (22932293) on September 19, 2011. Google's response also identified Hassanshahi's email address as shantia34@gmail.com.

16. On October 18, 2011, I conducted research on Hassanshahi in TECS and discovered the following information:

a. In 2003, Hassanshahi was under investigation by HSI/Oxnard, CA for conspiracy to violate IEEPA. The name and address information for Hassanshahi provided in the Oxnard investigation matched the name and address information Google provided for him in their subpoena return on October 18, 2011. The investigation by the HSI/Oxnard office revealed that Hassanshahi and two other partners had established an American company that attempted to enter into a contract with a Chinese company to build a computer production facility in Iran. Hassanshahi's company filed a breach of contract law suit against the Chinese company in California state court. That lawsuit was dismissed, in part because the contract involved doing business in Iran, and therefore was unenforceable because it was against public policy. The Department of Justice declined to file criminal charges against Hassanshahi and his partners.

b. On October 14, 2007, Hassanshahi returned from Mexico to the U.S. at the San Ysidro, CA port of entry as a passenger in a motor vehicle. Border officials determined that there was reason to investigate the vehicle, and as a result, Hassanshahi was interviewed by U.S. Customs and Border Protection officers. He was thereafter released and admitted into the United States.

c. In 2005, Hassanshahi was questioned by U.S. Customs and Border Protection officers when he returned from Dubai with $15,000 cash, which he had declared.

d. Records showed that in 2006, Hassanshahi returned from Tehran, Iran with a traveling companion.

e. Records showed that since 2006, Hassanshahi traveled to Iran four times: twice in 2008, once in 2010 and once in 2011. In fact, on the date of my research, the most recent record showed that Hassanshahi was still outside of the United States.

17. Based on the information about Hassanshahi that I learned from TECS, as well as from the other sources described above, I had reason to believe that Hassanshahi may have

been attempting to help Sheihki, or someone else, export protection relays to Iran in violation of U.S. laws. Accordingly, on November 29, 2011, I augmented the existing TECS records regarding Hassanshahi by entering instructions that I should be alerted if and when he returned to the United States, and that he should be referred for secondary screening by U.S. Customs and Border Protection officers when he returned to the U.S.

18. On December 20, 2011, I prepared and served an ICE Administrative Export Enforcement Subpoena on Google/Google Voice for subscriber information and recent internet protocol logs for the shantia34@gmail.com address. On January 10, 2012, Google responded to the subpoena. That response showed that the email account had been accessed in Iran 24 times between December 8 and December 15, 2011.

19. On January 11, 2012, I received an alert that Hassanshahi would be returning to the U.S. on January 12, 2012. He was scheduled to arrive on a flight at the Los Angeles International Airport ("LAX"). I alerted various law enforcement officials in Los Angeles to arrange for Hassanshahi's reception when he arrived. I could not participate in Hassanshahi's reception because I would be stationed at my office in Sterling, Virginia, when he was scheduled to arrive.

20. Law enforcement officials involved in Hassanshahi's secondary screening reported to me that on January 12, 2012, Hassanshahi arrived at LAX and presented himself for admission into the U.S. as an American citizen. He was then referred for a secondary screening with Homeland Security officers, and during that screening they detained his personal laptop computer and other electronic accessories. The laptop computer and accessories were mailed to me in Sterling, Virginia, for a forensic evaluation.

21. I received Hassanshahi's laptop computer and accessories on January 17, 2012, and they were submitted for forensic evaluation on the same day. A number of documents, including many that had to be translated from Farsi into English, were recovered from Hassanshahi's laptop. I mailed Hassanshahi's laptop and accessories to him on February 7, 2012.

I SWEAR OR AFFIRM THAT THE REPRESENTATIONS MADE ABOVE ARE TRUE AND CORRECT TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

Joshua J. Akronowitz, Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Dated: October 14, 2014

Lynda Randolph
Notary Public, District of Columbia
My Commission Expires 9/30/2016