**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 13-274 (RC) |
| | : | |
| v. | : | |
| | : | |
| SHANTIA HASSANSHAHI, | : | |
| | : | |
| Defendant. | : | |

**THE UNITED STATES' RESPONSE TO THE COURT'S DIRECTIVE**
**FROM THE JANUARY 29, 2015 STATUS CONFERENCE**

At the most recent status conference in this case, the Court directed the government to provide briefing as to two legal issues. Below, the government provides support for its positions that (1) information obtained by one law enforcement agency for one purpose may lawfully be shared with another law enforcement agency for another purpose, and (2) there is, in any event, no suppression remedy for a non-constitutional violation of law where Congress has not provided such a remedy.

**Background**

The Controlled Substances Act provides administrative subpoena authority: "In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may . . . require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a); *cf. United States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996) (observing that Section 876(a) "is written to give the DEA broad powers to investigate violations of federal drug laws"). The Attorney General has delegated this

authority to the Administrator of the Drug Enforcement Administration (DEA) who, in turn, has delegated it to certain DEA officials.  *See* 28 C.F.R. pt. 0, subpt. R & App.

Using this administrative subpoena authority, DEA subpoenaed telecommunications metadata from certain United States telecommunications service providers.  Doc. # 49-1, ¶ 4.  This metadata, which consisted only of the calling and receiving telephone number, the date, time, and duration of the call, and the method by which the call was billed, related to international telephone calls from the United States to a foreign country that DEA determined to have "a demonstrated nexus to international drug trafficking and related criminal activities."  *Id.*  One of the countries so designated was Iran.  *Id.*  Among the information obtained by DEA pursuant to its administrative subpoena authority was metadata concerning a telephone call placed from United States number (818) 971-9512 to Iranian number 98214406457.  *See id.* ¶ 3.

Separately, in August 2011, Homeland Security Investigations (HSI) received an unsolicited e-mail from a source indicating that he had been contacted by an Iranian individual identified as M. Sheikhi, who was seeking to procure "protection relays."  Doc. # 42-1, ¶ 2.  Sheikhi's e-mail to the source contained a list of parts Sheikhi sought to purchase, as well as Sheikhi's e-mail address, a Tehran business address, and the Iranian telephone number 98214406457.  *Id.*  HSI sought investigative assistance from DEA, which queried Sheikhi's number in its database.  *See id.* ¶ 3; Doc. # 49-1, ¶¶ 3, 5.  DEA then informed HSI that there had been a call between United States number (818) 971-9512 and the queried Iranian number.  *See* Doc. # 42-1 ¶ 4; Doc. # 49-1, ¶ 3.  HSI then took a number of additional investigatory steps that ultimately led to substantial evidence of defendant's guilt.  *See United States v. Hassanshahi*, __ F. Supp. 3d __, 2014 WL 6735479, at *7 (D.D.C. Dec. 1, 2014).

Defendant initially moved to suppress this evidence on the grounds that it resulted from the bulk collection of telephony metadata allegedly in violation of defendant's Fourth

Amendment rights. *See* Doc. # 28 (relying principally on *Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013), *appeal pending*).[1] The Court assumed *arguendo* that there had been a Fourth Amendment violation, but found that any such violation was sufficiently attenuated from the acquisition of the evidence such that the evidence was not the "fruit" of the alleged Fourth Amendment violation. *See Hassanshahi*, 2014 WL 6735479, at *4-*11. The Court simultaneously directed the government to provide the Court with "an *ex parte* declaration summarizing the contours of the mysterious law enforcement database used by HSI, including any limitations on how and when the database may be used." *Id.* at *8 n.6. The government filed a responsive declaration and subsequently provided a public, redacted version to defendant. *See* Doc. # 49-1. The main additional information provided to defendant by this declaration was that the database that defendant had incorrectly assumed to be a National Security Agency database containing information collected pursuant to 50 U.S.C. § 1861 was actually a DEA database containing information collected pursuant to 21 U.S.C. § 876.

At a conference before the Court on January 29, 2015, defense counsel asked the Court to permit a new motion to suppress the evidence that had been the subject of the previous unsuccessful motion to dismiss. The defense based this request on the recent disclosure that information in the database had been obtained pursuant to narcotics-related authority, Section 876, while the instant case is not a narcotics case.[2] The government indicated its positions that

---

[1] Defendant's motion also made the separate argument, not relevant here, that the evidence should be suppressed because the government lacked reasonable suspicion to search his laptop during a border search in January 2012. *Id.* This Court found that it was unnecessary to reach the question as to whether reasonable suspicion is required for forensic computer searches at the border because the Court found that reasonable suspicion existed in this case. *Hassanshahi*, 2014 WL 6735479, at *12.

[2] Defense counsel also indicated his belief that DEA may have instructed agents not to directly use information from the database, but to find alternative methods for obtaining the information, so as to conceal the existence of the database. While it would not be improper for a law enforcement agency to take steps to protect the confidentiality of a law enforcement sensitive investigative technique, this case raises no such issue.

(1) information obtained by one law enforcement agency for one purpose may lawfully be shared with another law enforcement agency for another purpose, and (2) there is, in any event, no suppression remedy for a non-constitutional violation of law where Congress has not provided such a remedy. The Court directed the government to brief these two issues and to file its response before the next status conference, which is set for March 2, 2015.

## **Argument**

I. **A Law Enforcement Agency that Has Lawfully Obtained Information May Share that Information with Another Law Enforcement Agency.**

DEA acquired information through use of its own investigatory techniques and for its own narcotics-related law enforcement purposes. DEA shared with HSI a small piece of this information to assist HSI in pursuing a non-narcotics law enforcement investigation. In doing so, DEA acted consistently with the longstanding legal rule that "[e]vidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken." *Jabara v. Webster*, 691 F.2d 272, 277 (6th Cir. 1982) (quotation marks omitted); *accord United States v. Joseph*, 829 F.2d 724, 727 (9th Cir. 1987).

Applying an analogous principle, the D.C. Circuit has held that querying an existing government database does not constitute a separate Fourth Amendment search: "As the Supreme Court has held, the process of matching one piece of personal information against government records does not implicate the Fourth Amendment." *Johnson v. Quander*, 440 F.3d 489, 498 (D.C. Cir. 2006) (citing *Arizona v. Hicks*, 480 U.S. 321 (1987)). The D.C. Circuit observed that a contrary rule would impose "staggering" consequences, placing "an intolerable burden" on law enforcement if each query of a government database "were subject to Fourth Amendment challenges." *Id.* at 499. Given that the Fourth Amendment is not implicated, and defendant has

4

not identified any statutory or regulatory provision that would proscribe the sharing of information between law enforcement agencies as part of a legitimate law enforcement investigation, there is no bar on law enforcement agencies cooperating to better identify criminals and to protect public safety.

To the extent that defendant seeks to argue that the administrative subpoenas to telephone providers violated the statutory requirements of Section 876(a), he clearly lacks standing to do so. *See, e.g.*, *United States v. Miller*, 425 U.S. 435, 444 (1976) ("this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant"); *Moffett*, 84 F.3d at 1293-94 (defendant could not challenge a Section 876(a) subpoena to third party on the grounds that it exceeded the DEA's statutory authority). Indeed, defendant is functionally in the same position as was the defendant in *United States v. Phibbs*, who sought to challenge Section 876(a) subpoenas that had allowed the DEA to obtain, *inter alia*, telephone records regarding defendant's calls. *See* 999 F.2d 1053, 1076-78 (6th Cir. 1993). The court in that case rejected the defendant's attempt, holding that while the recipient of an administrative subpoena may challenge it,[3] a non-recipient defendant may not, at least where the subpoenaed documents consist of the recipient's business records, including telephone records. *See id.* at 1077 ("Here, the administrative subpoenas were not directed at Rojas, but rather at third party businesses . . . . It is evident, however, that Rojas did not have both an actual and justifiable privacy interest in any of these materials, including his credit card statements and telephone records."); *cf. United States v. Harrington*, 761 F.2d 1482, 1485 (11th Cir. 1985). Any statutory limits on the DEA's subpoena authority exist to protect the

---

[3] Even the recipient of an administrative subpoena will face a heavy burden if it attempts to quash an administrative subpoena on the grounds that it is beyond the statutory scope of the agency's subpoena power. This is because of "the long-standing doctrine that administrative agencies must be given wide latitude in asserting their power to investigate by subpoena." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001).

rights of the subpoena recipient and not a non-recipient defendant, *see Phibbs*, 999 F.2d at 1077-78, and it is axiomatic that a criminal defendant may not base a suppression motion on the rights of third parties, *see, e.g.*, *United States v. Salvucci*, 448 U.S. 83 (1980).

## II. There Is No Suppression Remedy for Use of an Administrative Subpoena, or of Information Obtained Pursuant to Administrative Subpoena, in Violation of Statutory Authority.

As this Court has recognized, the Supreme Court has cautioned against expansive application of the exclusionary rule "because of its 'substantial social costs.'" *United States v. Bourdet*, 477 F. Supp. 2d 164, 175 (D.D.C. 2007) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)); *see also Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364 (1998) (the exclusionary rule "undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions"). Indeed, the Supreme Court has "repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 347 (2006) (quotation marks omitted). Thus, courts, including the Supreme Court, "have emphasized [that] suppression is a disfavored remedy, imposed only where its deterrence benefits outweigh its substantial social costs or (outside the constitutional context) where it is clearly contemplated by the relevant statute." *United States v. Forrester*, 512 F.3d 500, 512 (9th Cir. 2008) (citing *Hudson*).

The high obstacle against imposing suppression is not overcome by an alleged violation of an administrative subpoena statute. Administrative subpoena statutes generally do not have statutory suppression provisions, and Section 876 is no exception. And, in the absence of explicit legislative language, a court cannot suppress evidence on the basis of a statutory violation that does not infringe upon the defendant's core constitutional rights. *See United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977) (holding that the availability of a suppression remedy

for "statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule").

The Supreme Court addressed this issue most recently in *Sanchez-Llamas v. Oregon*, where it rejected a petitioner's request for an exclusionary remedy for violation of the Vienna Convention on Consular Relations (VCCR). *See* 548 U.S. at 348-50. There, the state had obtained a confession from the petitioner after failing to afford him his rights under the Convention. *See id.* at 340. In holding that no suppression was available for the non-constitutional violation at issue, the Court observed that the exclusionary rule exists "primarily to deter constitutional violations." *Id.* at 348. The Court further stated that in the "few cases in which we have suppressed evidence for statutory violations . . . the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." *Id.* Specifically, the Court identified three such cases, each of which was decided in the 1940's or 1950's and each of which concerned a statute that prophylactically protected Fourth Amendment or Due Process rights at a time when the judiciary had not fully fleshed out those constitutional protections. *See id.* at 345 (citing *McNabb v. United States*, 318 U.S. 332 (1943); *Mallory v. United States*, 354 U.S. 449 (1957); *Miller v. United States*, 357 U.S. 301 (1958)).

In *McNabb*, the Court suppressed "incriminating statements obtained during a prolonged detention of the defendants, in violation of a statute requiring persons arrested without a warrant to be promptly presented to a judicial officer." *Sanchez-Llamas*, 548 U.S. at 348. The Court found that the statutory right was intended to "avoid all the evil implications of secret interrogation of persons accused of crime." *McNabb*, 318 U.S. at 344. *Mallory* involved the suppression of statements obtained during a similar detention and interrogation, this time in violation of the Federal Rules of Criminal Procedure. *See* 354 U.S. at 452-53; *see also Miranda*

7

*v. Arizona*, 384 U.S. 436, 463 (1966) (observing that the holdings of *McNabb* and *Mallory* were "responsive to the same considerations of Fifth Amendment policy that unavoidably face us now"); *cf. Corley v. United States*, 556 U.S. 303, 320-21 (2009).

*Miller* involved suppression of evidence that resulted from an unlawful arrest. *See* 357 U.S. at 313-14. While the Court in *Miller* found a violation of 18 U.S.C. § 3109, the case represents an early application of a principle that is now understood to be part of Fourth Amendment law. *See United States v. Southerland*, 466 F.3d 1083, 1085-86 (D.C. Cir. 2006) (observing that "§ 3109 and the Fourth Amendment have merged both in the standards governing entries into the home and in the remedy for violations of those standards"). Moreover, the D.C. Circuit has recognized that *Miller* is no longer controlling law on the issue of suppression. *See id.* at 1086 (holding, *contra Miller*, that suppression was not an available remedy for a violation of 18 U.S.C. § 3109). In doing so, the D.C. Circuit observed that *Miller* "merely assumed that suppression followed a violation" without "thorough analysis of the issue," and was contrary to subsequent Supreme Court precedent. *Id.*

In contrast to *McNabb* and *Mallory*, which implicated Fifth Amendment rights, and *Miller*, which implicated Fourth Amendment rights, any statutory violation that defendant might posit here, whether the supposed use of the wrong administrative subpoena authority or the sharing of information between law enforcement agencies, would not implicate any constitutional right enjoyed by defendant. *See supra* Part I. This Court's holding in *United States v. Bourdet*, 477 F. Supp. 2d 164 (D.D.C. 2007), is on point. In *Bourdet*, this Court addressed a claimed violation of the Mansfield Amendment, which provides that "[n]o officer or employee of the United States may directly effect an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts, notwithstanding any other provision of law." 22 U.S.C. § 2291(c)(1). Applying the Supreme Court's holding in *Sanchez-*

*Llamas*, this Court held that there was no suppression remedy for a Mansfield Amendment violation because that provision is "far removed from the concerns of a defendant's Fourth and Fifth Amendment rights." 477 F. Supp. at 176. Section 876's grant of law enforcement authority is at least as far removed from the concerns of the Fourth and Fifth Amendment as the Mansfield Amendment's limitation on law enforcement authority.

Moreover, like the statutory violation that this Court addressed in *Bourdet*, the statutory violation posited here concerns "the proper role of [particular law enforcement] officials" and is "unlikely to produce unreliable [evidence]." 477 F. Supp. 2d at 176. Indeed, there is no intimation at all that the evidence in this case is unreliable and, indeed, there is no connection whatsoever between the legality of the administrative subpoena and the reliability of the evidence later discovered on defendant's laptop.

Thus, as in *Bourdet*, the statutory claims that might be made in this case would not warrant any suppression remedy. *See also, e.g.*, *Sanchez-Llamas*, 548 U.S. at 348-50 (no suppression for non-constitutional violation of VCCR); *United States v. Caceres*, 440 U.S. 741, 754-55 (1979) (holding that, where agent's violation of agency regulations did not contravene defendant's constitutional rights, "our precedents enforcing the exclusionary rule to deter constitutional violations provide no support for the rule's application in this case"); *Donovan*, 429 U.S. at 432-39 (no suppression for two statutory violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968); *Forrester*, 512 F.3d at 512-13 (no suppression for violation of pen register statute as "there is no mention of suppression of evidence in the statutory text"); *Southerland*, 466 F.3d at 1086 (no suppression for violation of 18 U.S.C. § 3109 where there would not be an independent suppression remedy for a constitutional violation).[4]

---

[4] *Accord United States v. Adams*, 740 F.3d 40, 43-44 (1st Cir. 2014) ("[S]tatutory violations, untethered to the abridgment of constitutional rights, are not sufficiently egregious to justify suppression."); *United*

**Conclusion**

The fact that HSI received investigative assistance from DEA in this case does not alter this Court's correct legal conclusion that there is no basis for suppressing the evidence obtained from defendant's laptop computer.

February 25, 2015                                     Respectfully submitted,

                                                      RONALD C. MACHEN JR.
                                                      United States Attorney

                                                      FREDERICK YETTE, D.C. Bar 385391
                                                      Assistant United States Attorney
                                                      National Security Section
                                                      555 4th Street, N.W.
                                                      Washington, D.C.  20530

                                                       /s/ Jeffrey M. Smith
                                                      JEFFREY M. SMITH, D.C. Bar 467936
                                                      Appellate Unit
                                                      National Security Division
                                                      950 Pennsylvania Ave., N.W.
                                                      Washington, D.C. 20530

---

States v. Abdi, 463 F.3d 547, 556-57 (6th Cir. 2006) ("[T]he exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitutional rights."); *United States v. Ani*, 138 F.3d 390, 392-93 (9th Cir. 1998) (no suppression for violation of regulation governing opening of international mail); *United States v. Mason*, 52 F.3d 1286, 1289 n.5 (4th Cir. 1995) (no suppression for search by customs agent in excess of statutory authority); *United States v. Fregoso*, 60 F.3d 1314, 1320 (8th Cir. 1995) (no suppression for violation of pen register statute); *United States v. Thompson*, 936 F.2d 1249, 1249-50 (11th Cir. 1991) (same).  *But see United States v. Dreyer*, 767 F.3d 826, 835-37 (9th Cir. 2014) (divided court failed to address *Sanchez-Llamos* and held that evidence should be suppressed where civilian employees of the Navy committed particularly widespread "violat[ions of] the regulations and policies proscribing direct military enforcement of civilian laws"), order noting "*sua sponte* en banc call" and directing further briefing (Dec. 16, 2014).